IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID D. DUELL, JR.,<br><br>            Petitioner,<br><br>vs.<br><br>PAUL CHAPPIUS, Superintendent, Elmira Correctional Facility,<br><br>            Respondent. | No. 9:17-cv-00341-JKS<br><br>MEMORANDUM DECISION |

David D. Duell, Jr., a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Duell is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Elmira Correctional Facility. Respondent has answered the Petition, and Duell has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On February 9, 2012, Duell was charged with various sexual offenses against his daughter, which were alleged to have occurred between October 2010 and July 2011. Prior to trial, defense counsel consented to the People's motion for a DNA sample from Duell.

Duell proceeded to a jury trial on October 15, 2012, which lasted three days. Seven witnesses, including the victim, testified for the prosecution. After the close of evidence on the first day of trial, the court informed defense counsel on the record that, during the victim's testimony, members of the courtroom gallery "were making direct eye contact with the witness and smiling, lip syncing, shaking their heads yes and no, the whole works has been going on." Counsel requested that those members of the audience not be in the courtroom the following day. The court expressed doubt that the audience members could be barred from the courtroom. The prosecutor indicated that

the audience members were family and friends of the victim who were there for moral support. The prosecutor stated that he would talk to them after the proceedings and "admonish them they're not to be smiling or making any head motions or gestures if that's what they were doing." The record does not indicate that further action was taken by either party, and trial testimony continued the following day. Duell testified on his own behalf and called no other witnesses.

At the conclusion of trial, the jury found Duell guilty of first-degree sexual abuse, 7 counts of second-degree sexual abuse, first-degree criminal sexual act, first-degree course of sexual conduct against a child, second-degree course of sexual conduct against a child, and 3 counts of endangering the welfare of a child. The court subsequently sentenced Duell as a second felony offender to an aggregate imprisonment sentence of 15 years followed by 25 years of post-release supervision.

Through counsel, Duell appealed his conviction, arguing that: 1) the evidence presented was legally insufficient to sustain a conviction as to Counts 2, 3, and 9 of the indictment; 2) the verdict was against the weight of the evidence; 3) his right to a fair trial was violated when courtroom spectators tried to communicate with the victim during her testimony; 4) counsel was ineffective for failing to address the legal insufficiency with respect to Counts 2, 3, and 9; and 5) his sentence was harsh and excessive. Duell also submitted a *pro se* supplemental brief in which he argued that the trial judge erred in its handling of the witness interference, the prosecution failed to meet its burden of proof, and trial counsel was ineffective for failing to request an expert to counter the People's DNA expert and move for a mistrial in response to the spectators' conduct. On January 2, 2015, the Appellate Division of the Supreme Court of New York issued a unanimous decision dismissing Counts 2, 3, and 9 of the indictment but affirming the judgment against Swan in all other respects. *People v. Duell*, 999 N.Y.S.2d 288, 293(N.Y. App. Div. 2015). Duell applied for leave to appeal

in the New York Court of Appeals, which was summarily denied on September 13, 2015. *People v. Duell*, 40 N.E.3d 581, 581 (N.Y. 2015).

Duell, acting *pro se*, then moved pursuant to New York Criminal Procedure Law ("CPL") § 440.10 to vacate the judgment of conviction. He argued that trial counsel was ineffective for failing to: 1) retain a DNA expert; 2) request additional DNA testing; 3) retain a expert specializing in child sexual abuse accommodation syndrome ("CSAAS"); 4) call exculpatory witnesses; and 5) properly question witnesses. In support of his motion, Duell attached an affidavit from his grandmother, who stated that she had been a frequent visitor to Duell's house during the time period alleged in the indictment and had seen no evidence of abuse. She stated that Duell and his wife argued often and were periodically estranged, and the grandmother believed the wife had fabricated the charges in response to disagreements over child-rearing issues. Duell did not submit an affidavit from his nephew, but stated that the nephew was living with Duell during June and July 2011 and did not see any evidence of abuse. The county court denied the motion in a reasoned, unpublished opinion issued on December 12, 2016. Duell sought leave to appeal, which was denied without comment on March 2, 2017.

Duell timely filed his initial *pro se* Petition for a Writ of Habeas Corpus to this Court on March 24, 2017. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A). This Court, through a previously-assigned judge, stayed the proceedings to allow Duell to exhaust his claims in state court. The action was reinstated, and Duell filed an amended petition (Docket No. 32; "Petition"), which is now before the undersigned judge and ripe for adjudication.

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Duell raises the following claims: 1) trial counsel was ineffective for failing to consult with or call a DNA expert; 2) counsel was ineffective for failing to request DNA testing of Duell's wife; 3) counsel was ineffective for failing to consult with or call a CSAAS expert; 4) he was denied a fair trial when spectators in the courtroom coached the victim during her testimony; 5) counsel was ineffective for failing to request a retrial or move to exclude the victim's testimony based on the witness interference; 6) counsel was ineffective for failing to move to suppress DNA evidence that was maintained in violation of chain of custody procedures; 7) counsel was ineffective for failing to call exculpatory witnesses; and 8) counsel was ineffective for eliciting from the victim testimony prejudicial to the defense.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez,* 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.      Freestanding Ineffective Assistance of Counsel (Grounds 1-3, 6-8)

Duell first contends that his trial counsel was ineffective for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Thus, Duell must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

New York's test for ineffective assistance of counsel under the state constitution differs slightly from the federal *Strickland* standard. "The first prong of the New York test is the same as the federal test; a defendant must show that his attorney's performance fell below an objective

6

standard of reasonableness." *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (citing *People v. Turner*, 840 N.E.2d 123 (N.Y. 2005)). The difference is in the second prong. Under the New York test, the court need not find that counsel's inadequate efforts resulted in a reasonable probability that, but for counsel's error, the outcome would have been different. "Instead, the 'question is whether the attorney's conduct constituted egregious and prejudicial error such that the defendant did not receive a fair trial.'" *Id.* at 123 (quoting *People v. Benevento*, 697 N.E.2d 584, 588 (N.Y. 1998)). "Thus, under New York law the focus of the inquiry is ultimately whether the error affected the 'fairness of the process as a whole.'" *Id*. (quoting *Benevento*, 697 N.E.2d at 588). "The efficacy of the attorney's efforts is assessed by looking at the totality of the circumstances and the law at the time of the case and asking whether there was 'meaningful representation.'" *Id.* (quoting *People v. Baldi*, 429 N.E.2d 400, 405 (N.Y. 1981)).

The New York Court of Appeals views the New York constitutional standard as being somewhat more favorable to defendants than the federal *Strickland* standard. *Turner*, 840 N.E.2d at 126. "To meet the New York standard, a defendant need not demonstrate that the outcome of the case would have been different but for counsel's errors; a defendant need only demonstrate that he was deprived of a fair trial overall." *Rosario*, 601 F.3d at 124 (citing *People v. Caban*, 833 N.E.2d 213, 222 (N.Y. 2005)). The Second Circuit has recognized that the New York "meaningful representation" standard is not contrary to the federal *Strickland* standard. *Id.* at 124, 126. The Second Circuit has likewise instructed that federal courts should, like the New York courts, view the New York standard as being more favorable or generous to defendants than the federal standard. *Id*. at 125.

7

Duell's ineffective assistance claims must fail, however, even under the more favorable New York standard. Duell first faults counsel for failing to offer an expert to rebut the testimony of prosecution experts about Duell's DNA and CSAAS. But Duell does not explain how either expert would have led to a different outcome given that Duell admitted that it was his sperm on the carpet samples and the record reflects that the CSAAS testimony, which was offered to explain why some children lie to counselors, had little value in this case where, as the Appellate Division found, "The expert never opined that [Duell] committed the crimes; that the victim was, in fact, sexually abused; or that the victim's behavior was consistent with such abuse." *Duell*, 999 N.Y.S.2d at 292-93.

Duell similarly alleges that counsel was ineffective for failing to seek DNA testing of his wife, the mother of the victim. According to Duell, if testing had been performed and the mother had been identified as a contributor to the DNA mixture found on the carpet, it would have bolstered his defense that the mother, and not her daughter, was the unknown DNA contributor. But such claim is too speculative to warrant habeas relief. Moreover, counsel used the prosecution's failure to compare the mother's DNA to the sample to argue that the prosecution had not met its burden of proof. It is quite possible that the testing would have hurt Duell's case if it eliminated the mother as the contributor. Likewise, Duell fails to show that counsel should have moved to suppress the DNA evidence because he provides no legal or factual basis establishing a defective chain of custody.

Duell further contends that counsel was ineffective for failing to present testimony from his grandmother and nephew. As an initial matter, Duell has never provided a sworn affidavit or declaration from his nephew setting forth the proposed testimony and affirmatively stating that the nephew would have actually testified if called. *See Schulz v. Marshall*, 528 F. Supp. 2d 77, 96 n.13

(E.D.N.Y. 2007) ("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases); *see also McCray v. Ercole*, No. 07 Civ. 6589, 2010 WL 6804661, at *7 (S.D.N.Y. Dec. 16, 2010) ("The failure to call a witness is particularly unlikely to constitute ineffective assistance in the absence of an affidavit or other evidence that the proposed witness would have provided relevant testimony."). Moreover, as the county court found, any testimony that they did not observe sexual abuse would not have been persuasive given that Duell would have necessarily tried to conceal such behavior. Further, had counsel presented the testimony of Duell's grandmother to show Duell's good character, it may have opened the door to proof of Duell's bad behavior, which could have been very damaging to his case.

Finally, Duell claims that counsel elicited prejudicial testimony from the victim on cross-examination and did not adequately cross-examine the prosecution's DNA expert. Witness cross-examination is generally viewed as a matter of trial strategy; accordingly, it is virtually unchallengeable "unless there is no . . . tactical justification for the course taken." *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (per curiam); *see also Strickland*, 466 U.S. at 690-91 (holding strategic choices made after a thorough investigation of the facts and law "virtually unchallengeable," although strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation"). Reviewing courts should be particularly mindful that, during cross-examination, counsel must often rely on "trial instinct and human insight in making on-the-spot decisions about the course of attack most likely to unnerve the witness and plant doubt in the minds of jurors." *Harris v.* Artuz, 100 F. App'x 56, 57-58 (2d Cir. 2004) (citing *Strickland*, 466 U.S. at 689

(cautioning against the distorting effects of hindsight in reviewing strategic decisions that proved unsuccessful)). An independent review of counsel's trial performance reveals that Duell does not satisfy this heavy burden. With respect to the DNA expert, Duell does not explain what further or more aggressive questioning would have shown, particularly given that Duell conceded that his sperm was on the carpet samples. Duell also argues that counsel should not have elicited from the victim that she reported to police an incident in which Duell allegedly masturbated in front of her in a tent. But counsel used that statement to get the victim to admit that her prior statement that she had not met with a certain police investigator before reporting the crimes at issue in this case was inaccurate. Duell thus fails to show that counsel had no tactical justification for his actions, and he is not entitled to relief on any argument advance in support of these grounds.

B.     Deprivation of Fair Trial/Ineffective Assistance of Counsel (Grounds 4, 5)

Finally, Duell alleges that he was deprived of a fair trial because spectators disrupted the proceedings by attempting to communicate with the victim witness during her testimony, and counsel was ineffective for failing to move for a mistrial or request that the victim's testimony be stricken. In this case, the record shows that the victim testified for two days. At the close of the first day of testimony, after the jury had left the courtroom, the trial judge informed defense counsel on the record that, during the victim's testimony, members of the courtroom gallery "were making direct eye contact with the witness and smiling, lip syncing, shaking their heads yes and no, the whole works has been going on." Counsel requested that those members of the audience not be in the courtroom the following day. The court expressed doubt that the audience members could be barred from the courtroom. The prosecutor indicated that the audience members were family and friends of the victim who were there for moral support. The prosecutor stated that he would talk to

10

them after the proceedings and "admonish them they're not to be smiling or making any head motions or gestures if that's what they were doing." The record does not indicate that further action was taken by either party, and trial testimony continued the following day. On cross-examination, the victim testified that she did not notice the spectators' efforts to communicate with her.

New York Judiciary Law § 4 provides that "[t]he sittings of every court within this state shall be public, and every citizen may freely attend the same." "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979)). The right, however, "is not absolute." *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012). It "may give way in certain cases to other rights or interest, such as the defendant's right to a fair trial . . . . Such circumstances will be rare, however, and the balance of interests must be struck with special care." *Id.* (quoting *Waller*, 467 U.S. at 45).

Given the judiciary's interests in promoting open trials, the trial court's decision to allow the family members and friends to remain in the audience at trial does not contravene or unreasonably apply federal law. Moreover, the Court cannot find that the trial court's refusal to bar those spectators from the courtroom rendered Duell's trial fundamentally unfair, given that the court informed the attorneys about the disturbance, the prosecutor admonished the spectators, and there was apparently no further issue. The Appellate Division concluded that "there is nothing to indicate that any actions by the spectators affected the victim's testimony. Indeed, the victim denied seeing any of the spectators' conduct, and there is nothing to establish that [Duell] was otherwise

prejudiced by that conduct." That conclusion is both reasonable and fully supported by the record. Duell is therefore not entitled to relief on any claim that he was deprived of a fair trial. For the same reasons, Duell fails to show that the extreme remedies of a mistrial or stricken testimony would have been granted here, and he thus fails to show that counsel was ineffective for failing to request such measures. *See Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance where counsel fails to raise meritless claims). Duell is therefore not entitled to relief on either of these grounds.

## V. CONCLUSION

Duell is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: October 11, 2018.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge